Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310-474-9111
Facsimile: 310-474-8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

THOMAS BICEK, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KIA AMERICA, INC.,

Defendant.

Case No. 8:26-cv-2068

**CLASS ACTION COMPLAINT**

**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**

**JURY TRIAL DEMANDED**

Plaintiff Thomas Bicek ("Plaintiff"), by and through his undersigned counsel, brings this action individually and on behalf of all others similarly situated against Defendant Kia America, Inc. ("Defendant" or "Kia"), and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action individually and on behalf of a class of similarly situated purchasers and lessees of Kia's model year 2023-2025 Telluride vehicles equipped with a 12.3-inch fully digital instrument cluster ("Vehicles" or "Class Vehicles").

2. As alleged herein, the Class Vehicles are defective and unsafe. They contain a defective instrument cluster which may cause the display to intermittently flicker, malfunction, become corrupted, turn off, or go completely blank during startup or vehicle operation (the "Cluster Defect" or "Defect"). When the Defect manifests, drivers may lose access to critical information ordinarily displayed through the cluster display screen, including vehicle speed, fuel level, warning lights, turn-signal indicators, tire-pressure warnings, driver-assistance alerts, and other telltales and indicators necessary to operate the Vehicles safely. The unexpected loss of this information distracts drivers, impairs their ability to assess and respond to changing vehicle and roadway conditions, and increases the risk of a collision.

3. The Defect may manifest without advance warning and may affect all or part of the instrument cluster. The display screen may flicker or become distorted before turning black, or it may suddenly fail altogether. In some Vehicles, the failure is intermittent and the display later returns; in others, the failure persists and requires a software update, reset, repair, or replacement of the instrument cluster assembly. Even after attempted repairs or replacement, the Defect may recur, leaving drivers unable to rely on the digital instrument cluster to display essential operating and safety information.

4. Kia knew years before Plaintiff purchased his Vehicle that the instrument cluster assembly in the Class Vehicles create safety and federal compliance concerns. Kia conducted two separate recalls involving blank Telluride cluster screens in 2021 and 2022, one involving software and another involving an electrical connection within the cluster assembly. Kia also recalled certain 2023 Tellurides and other Kia vehicles in 2023 because a booting error could cause a blank instrument cluster screen and prevent drivers from seeing federally required telltales and indicators.

5. Kia is aware of and has identified the root cause of the Defect, including through internal documents and reports addressing the instrument cluster assembly failure in the Class Vehicles. Despite the serious issues posed by the Defect, Kia has omitted this material information from consumers and has not issued a recall or reliable fix. Class Members are thus left in the lurch, driving vehicles with instrument cluster displays that could unexpectedly fail at any moment.

6. Plaintiff brings this action to obtain redress for himself and those who have purchased or leased Vehicles across the United States. Plaintiff seeks relief for Kia's breaches of implied warranties, fraud, unjust enrichment, and violations of consumer protection law. Plaintiff also seeks declaratory and injunctive relief to prevent Kia's continued misconduct, and to require it to issue an appropriate fix.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, the proposed classes have at least 100 members, and this is a class action in which certain of the class members (including Plaintiff) and Kia are citizens of different states.

8. Venue is proper in this judicial District under 28 U.S.C. § 1391 because Kia is headquartered in this judicial District, Kia conducts significant business

throughout this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in, or emanated from, this District.

9. At all pertinent times, Kia was engaged in the marketing, advertisement, sale, and lease of the Class Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

### Plaintiff Thomas Bicek

10. Plaintiff Bicek is a citizen of the State of Illinois, residing in DuPage County, Illinois. In or around March 2025, Plaintiff purchased a used 2023 Kia Telluride from an authorized Kia dealership located in Willowbrook, Illinois. Shortly after purchasing his Vehicle, the instrument cluster display partially went out without warning, preventing him from reliably accessing information ordinarily communicated through the instrument cluster display. Because of the Defect, and Kia's inability or refusal to permanently remedy the issue, Plaintiff continues to be exposed to a serious safety risk associated with instrument cluster failure in the Class Vehicle.

11. At the time of purchasing the Vehicle, Plaintiff did not know that the Vehicle contains an unsafe Defect and that Plaintiff would not be able to safely drive the Vehicle without risk of the instrument cluster assembly failing. Had Kia disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to purchasing the Class Vehicle, Plaintiff would not have purchased the Vehicle, or would not have paid the purchase price that Plaintiff did. Plaintiff relied upon Kia that it was providing the full picture of information regarding the Vehicle and relied upon the idea that Kia would not withhold material information about safety defects in the Vehicle, including the Defect. As a result, Plaintiff received less than what was paid for the Vehicle and did not receive the benefit of the bargain.

**Defendant Kia America, Inc.**

12. Defendant Kia America, Inc. is a California corporation organized, in existence, and registered to do business in California under California law, with its corporate headquarters located at 111 Peters Canyon Road, Irvine, California, 92606.

13. Kia markets, sells, and leases the Class Vehicles throughout the United States, including in this District. Kia is responsible for sales, marketing, service, distribution, import, and export of Kia-branded products, including vehicles and parts, in California, and in the United States. Kia is also the warrantor and distributor of Kia vehicles, including the Vehicles, in California and throughout the United States.

14. Kia has thousands of authorized dealerships across the United States—which are its agents—and controls the distribution of automobiles, parts, services, and warranty repairs for Kia vehicles throughout the United States, all of which are under Kia's control. Kia authorizes these distributors and dealerships to sell Kia vehicles, parts, and accessories and to service and repair Kia vehicles using Kia parts. Kia exerts control over its dealership-agents through the technical service bulletins and other repair guidance it issues to its dealerships relating to problems arising with Kia vehicles, including the Defect in the Vehicles, and instructing dealerships how to perform repairs; Kia's warranty directs Vehicle owners and lessees to present their Vehicles to Authorized Kia Dealers for repairs and service; and Kia requires authorized dealerships to submit detailed data to it regarding repairs performed at dealerships.

15. Kia does substantial business in California, with a significant portion of the sales and leases made in California. In fact, most of its work in sales, marketing, distribution, import, export, and warranty of Kia-branded products, including vehicles and parts, takes place in California.

16. California hosts a significant portion of Kia's U.S. operations, including sales and service offices and financial service offices, among others. Kia's research and design facilities are in California.

17. In addition, the conduct that forms the basis for each and every class member's claims against Defendant emanated from Kia's headquarters in California and is consistent with directives of Defendant's personnel in California.

## FACTUAL ALLEGATIONS

18. This action is brought against Kia on behalf of Plaintiff and all persons who purchased or leased Kia's model year 2023-2025 Telluride vehicles equipped with a 12.3-inch full-LCD instrument cluster. The models and model years of vehicles comprising the Class Vehicles are subject to revision based upon information learned through the discovery process.

19. Kia America, Inc. is the marketing and distribution arm of Kia Motors Corporation based in Seoul, Korea. Headquartered in Irvine, California, Kia touts itself as having "been the highest ranked mass market brand in initial quality for five consecutive years according to J.D. Power, and is recognized as one of the 100 Best Global Brands by Interbrand."[1] Kia "offers a complete range of vehicles sold through a network of nearly 800 dealers in the U.S."[2]

20. In a press release published on Kia's website, www.kiamedia.com, Kia quotes its president Michael Cole as stating, "Kia is committed to building the safest vehicles possible" and that the six Top Safety Pick (TSP) ratings Kia recently received from the Insurance Institute for Highway Safety (IHS) reflect Kia's

---

[1] KIA MEDIA, *Kia receives Six Top Safety Pick Ratings From Insurance Institute for Highway Safety* (Feb. 17, 2020), https://www.kiamedia.com/us/en/media/pressreleases/16009/kia-receives-six-top-safety-pick-ratings-from-insurance-institute-for-highway-safety.

[2] *Id.*

"commitment and reaffirms Kia's continued effort to strive for safety improvement and advancement in every model" it produces.[3]

21. Kia sells Class Vehicles to its authorized distributors and dealerships, which, in turn, sell or lease those vehicles to consumers. After these dealerships sell cars to consumers, including Plaintiff and members of the Class, they purchase additional inventory from Kia to replace the Vehicles sold and leased, increasing Kia's revenues. Thus, Plaintiff's and class members' purchases of Vehicles accrue to the benefit of Kia by increasing its revenues.

***<u>Overview of the Kia Telluride</u>***

22. The Kia Telluride is a three-row SUV that was initially introduced in 2019 as a 2020 model (first generation). Upon release, Kia announced "Today the all-new 2020 Kia Telluride made its official on-road and off-road debut, beginning a new adventure for Kia with its biggest and boldest SUV ever. . . . Imagined in America, designed at Kia's design studio in California, and assembled in Georgia, the Telluride is the largest Kia ever. It provides comfortable seating for up to eight, a powerful 291-hp 3.8-liter V6, available active on-demand all-wheel drive, and an inspiring view of the world. The Telluride offers potential for exploration and adventure every time it's on the road."[4]

23. In 2024, U.S. News & World Report named the Telluride in its "Best Cars for Families" award for the fifth year in a row.[5] Kia touts that the award honors cars that "offer the best combination of safety, reliability, space, convenience, and

---

[3] *Id.*

[4] KIA MEDIA, *2020 Telluride Overview* (Mar. 19, 2019), https://www.kiamedia.com/us/en/models/telluride/2020.

[5] KIA MEDIA, *Kia Telluride Wins a 2024 Best Cars for Families Award from U.S. News & World Report* (Mar. 20, 2024) https://www.kiamedia.com/us/en/media/pressreleases/21947/kia-telluride-wins-a-2024-best-cars-for-families-award-from-us-news-and-world-report.

connectivity."[6] It also describes the Telluride, which it designed for the U.S. market, as a "a head-turning proposition from the start."[7]

24. In the press release, Kia quotes its Chief Operating Officer and Executive Vice President of Kia America, Steven Center, as stating, "The Telluride's recognition as U.S. News & World Report's best 3-row midsize SUV for families highlights the industry-leading quality of Kia's technology, convenience and safety features, . . . Kia is honored to be named among the 2024 Best Cars for Families."

***The Defective Digital Instrument Cluster Assembly in the Class Vehicles***

25. Beginning with the 2023 model year, Kia offered higher-trim Tellurides with a curved panoramic display integrating a 12.3-inch full-LCD gauge cluster and a 12.3-inch center infotainment display.[8]

26. The 12.3-inch cluster replaces traditional analog gauges with a digital display.[9] It presents or communicates vehicle speed, engine speed, fuel level, estimated range, odometer and trip data, gear position, driving mode, turn-signal status, tire-pressure information, and system-malfunction telltales.

27. The instrument cluster also displays warnings and status information associated with the Telluride's advanced driver-assistance systems. Those systems include, depending on trim, Forward Collision-Avoidance Assist, Lane Keeping

---

[6] *Id.*

[7] KIA MEDIA, *Kia Telluride Named 'Best Family Car of 2024' by Cars.com* (Feb. 7, 2024) https://www.kiamedia.com/us/en/media/pressreleases/21823/kia-telluride-named-best-family-car-of-2024-by-carscom.

[8] Kia Am., Inc., New 2023 Kia Telluride Trailblazes Through Texas with More Headturning Style and Enhanced Ruggedness (Oct. 27, 2022), https://www.kiamedia.com/us/en/models/telluride/2023 (describing a curved and seamless dual 12.3-inch display and available 12.3-inch gauge cluster).

[9] *Id.*

Assist, Lane Following Assist, Blind-Spot Collision Warning, Driver Attention Warning, Smart Cruise Control, Highway Driving Assist, and related functions.[10]

28. Kia promoted the panoramic digital display and advanced safety technology as material features of the Class Vehicles.[11]

29. The design consolidates multiple independent categories of information into a single electronic system. Accordingly, a failure in the instrument cluster assembly, its software, power supply, connection, communications bus, display unit, or associated control hardware can simultaneously impair numerous gauges, telltales, and warnings.

30. When the instrument cluster display goes blank, a driver may be unable to confirm speed, remaining fuel, gear position, tire-pressure status, or the presence of a vehicle malfunction. The inability to access that information is particularly dangerous when a failure occurs while the vehicle is moving.

31. As alleged herein, the Class Vehicles are equipped with defective instrument cluster assemblies to fail and which may cause the display to intermittently flicker, malfunction, become corrupted, turn off, or go partially or completely blank during startup or vehicle operation.

32. Kia is aware of and has identified the root cause of the Defect, including through internal documents and reports addressing the instrument cluster assembly

---

[10] *See* Kia Am., Inc., *2023 Kia Telluride Features & Options,* https://www.kiamedia.com/us/en/models/telluride/2023/features; Kia Am., Inc., *2024 Kia Telluride Features & Options*, https://www.kiamedia.com/us/en/models/telluride/2024/features; Kia Am., Inc., *2025 Kia Telluride Features & Options*, https://www.kiamedia.com/us/en/models/telluride/2025/features.

[11] *See, e.g.,* Kia America, Inc., *2025 Telluride Owner's Manual, "Instrument Cluster," Kia Owner's Manual,* https://ownersmanual.kia.com/manual/Telluride?projCode=ON&langCode=en_US&countryCode=B28&content=ownersmanual&year=2025 (last visited July 28, 2026); Kia America, Inc., *2027 Telluride Features & Functions Guide*, https://dealervideos.kia.com/ffg/guide/2027/2027_telluride_ffg.pdf (last visited July 28, 2026).

failure in the Class Vehicles. Despite the serious issues posed by the Defect, Kia has omitted this material information from consumers and has not issued a recall or reliable fix. Class Members are thus left in the lurch, driving vehicles with instrument cluster displays that could unexpectedly fail at any moment.

***Kia Had Exclusive Knowledge of the Defect***

33. At the same time Kia was selling the Class Vehicles to the car-buying public, Kia was aware of the problems with Class Vehicles' instrument clusters, both from the internal validation and testing that Kia performed and from its past experience and expertise.

34. Kia requires that each Vehicle component be tested for durability and functionality before mass production. Kia employs several teams of engineers whose work is focused on testing the functionality of vehicle components and systems, including testing on the completed vehicle, bench testing, road or simulation testing, validation test technicians, and reliability test engineers responsible for guaranteeing full vehicle and component performance for durability and functionality requirements.

35. As part of Kia's pre-sale testing, it performs road and stress tests on the instrument cluster assemblies in its vehicles over certain and set durations. Kia's testing replicates actual consumer use of the Vehicles and the instrument cluster assemblies in the Class Vehicles and would have revealed to Kia that the Vehicles contain the Defect that causes the instrument cluster display to function intermittently or become inoperable, posing a serious safety hazard.

36. Federal regulations require automobile manufacturers to build vehicles that comply with the Federal Motor Vehicle Safety Standards (49 C.F.R. § 571). The existence of these standards necessarily requires Kia to extensively test its vehicles prior to selling them. During the course of these and other quality validation testing conducted by its engineers prior to their sale, Kia became aware of the Defect.

37. Kia's history of Telluride cluster recalls establishes that it understood, before the Class Vehicles were sold, that intermittent blank LCD cluster screens can be difficult to reproduce, can arise from different software and hardware causes, and can create federal noncompliance and crash risk.

38. In July 2021, Kia investigated intermittent blank LCD instrument-cluster screens in certain 2022 Tellurides. Kia's chronology expressly noted that the condition was difficult to duplicate and that drivers could lose the odometer, gear-selector indicator, and other information.[12]

39. Kia determined that the 2021 condition resulted from a software error affecting display startup. Kia initiated Recall SC215 for approximately 5,143 Tellurides equipped with a 3.5-inch LCD cluster and directed dealers to install improved software.[13]

40. In 2022, Kia initiated a separate recall, SC237, involving approximately 3,596 additional model-year 2022 Tellurides. Kia attributed those blank LCD screens to excess adhesive on a circuit board that could cause a poor electrical connection, and the recall remedy required replacement of the cluster assembly.[14]

41. The 2021 and 2022 recalls involved materially similar consequences but different root causes and remedies. They demonstrated that blank Telluride cluster screens were not limited to one software release or one isolated production error.

---

[12] Kia Am., Inc., 2022MY Telluride Blank LCD Cluster Screen Chronology: Basis of Safety Defect Determination 573.6(c)(6) (July 2021), https://static.nhtsa.gov/odi/rcl/2021/RMISC-21V577-3326.pdf.

[13] Kia Am., Inc., SC215 - 2022 MY Kia Telluride Blank LCD Cluster Screen, FMVSS Noncompliance Recall Campaign Q&A (July 29, 2021), https://static.nhtsa.gov/odi/rcl/2021/RMISC-21V577-7763.pdf; Kia Am., Inc., Important Noncompliance Recall, NHTSA Recall No. 21V577 (Aug. 3, 2021), https://static.nhtsa.gov/odi/rcl/2021/RCONL-21V577-9345.pdf.

[14] Kia Am., Inc., SC237 - 2022 MY Telluride Vehicles, Blank Instrument Cluster LCD Screen, Noncompliance Safety Recall Campaign Q&A (July 11, 2022), https://static.nhtsa.gov/odi/rcl/2022/RCMN-22V344-4819.pdf.

42. In February 2023, Kia Corporation notified Kia's North American Safety Office of potential blank 4.2-inch LCD cluster issues affecting 2023 Tellurides and other Kia models. Kia identified 71 incident VINs during its initial analysis and six additional field incidents by April 2023.[15]

43. On April 19, 2023, Kia concluded that the inability to see telltales and indicators caused noncompliance with FMVSS Nos. 101, 138, and 208. Kia decided to conduct another federal noncompliance recall.[16]

44. Kia issued Recall SC270 in May 2023. The campaign advised that a booting error could cause a blank cluster screen and prevent drivers from seeing federally required information. Kia acknowledged that the condition could increase crash risk and prescribed a software logic update.[17]

45. For Telluride vehicles, SC270 identified a limited production range and a specific 4.2-inch cluster part number. The campaign did not purport to cover every 2023 Telluride or the distinct 12.3-inch full-LCD cluster installed in the Class Vehicles.

46. Kia's recall history put it on notice that an intermittent blank cluster may appear temporarily resolved, may be difficult to reproduce, and may require a remedy tailored to the actual software, electrical connection, or component failure at issue.

---

[15] Kia Am., Inc., 2023MY Blank Instrument Cluster Screen (Multiple Kia Models): Basis of Safety Defect Determination 573.6(c)(6) (Apr. 2023), https://static.nhtsa.gov/odi/rcl/2023/RMISC-23V298-1571.pdf.

[16] Kia Am., Inc., 2023MY Blank Instrument Cluster Screen (Multiple Kia Models): Basis of Safety Defect Determination 573.6(c)(6) (Apr. 2023), https://static.nhtsa.gov/odi/rcl/2023/RMISC-23V298-1571.pdf.

[17] Kia Am., Inc., Safety Recall Campaign SC270, Cluster Display Logic Improvement (May 2023), https://static.nhtsa.gov/odi/rcl/2023/RCRIT-23V298-5550.pdf; Kia Am., Inc., Part 573 Safety Recall Report, NHTSA Recall No. 23V298, https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V298-7325.PDF; Kia Am., Inc., Important Safety Recall, NHTSA Recall No. 23V298 (May 26, 2023), https://static.nhtsa.gov/odi/rcl/2023/RCONL-23V298-7734.pdf.

47. Kia was also aware of the Defect based upon the raft of negative consumer responses and reactions about the Class Vehicles, which in addition to its pre-sale testing, supports an inference of knowledge—yet it continued to sell and lease the Vehicles with the Defect.

48. Kia closely reviews Kia and Kia-related automobile message boards, consumer websites, complaints on the NHTSA website, and other websites and sources relating to its vehicles and defects, complaints, or other issues pertaining to the Kia's vehicles, including the Class Vehicles. It specifically pays considerable attention to instrument cluster assemblies in its automobiles, as these are critical safety components.

49. The internet is replete with complaints from Class Vehicle owners and lessees who, like Plaintiff, have experienced the unsafe Defect and resultant malfunctioning or failing instrument cluster.

50. Numerous online message board discussions and complaints highlight the dangers posed by the Defect. A sampling of these are below:

(Complaints from Kia Telluride Forum)[18]



K
Kaivens
New Member
Messages: 1
Likes: 0
Location: St. Louis MO

Feb 26, 2024 #1

My digital cluster screen is black and will not turn on. I cannot see how fast I am going, or any important safety details while driving. This has been an issue I've been experiencing for over a month now. My service department has been unable to fix it, and is awaiting an answer from Kia for help. I am aware of a recall for this issue, however that recall does not come up under my VIN # and according to my dealership, would not help because of specific programing. I call weekly for updates, and there are never any answers.

Other details: I do have an open case with Kia consumer affairs
Telluride model is a 2023 SX Prestige Xline, with 12,000 miles on it.

Any and all advice would be appreciated!

[18] Kia Telluride Technical Forums (various users), *Cluster issues,* https://www.kiatelluride.org/threads/brakes-failing.1653/ (last visited July 28, 2026).

J

**JadeGood**

Member

Messages: 26
Likes: 0
Location: USA

Apr 1, 2024 #2

Your frustration with the situation is justified given the importance of proper operation of the digital cluster to the safety and functionality of your vehicle. It may be worth contacting Kia again, emphasizing the seriousness of the problem and insisting on finding a solution.

(Complaints from Kia Telluride Forum)[19]

M

**mdqs967**

New member

Joined: Aug 9, 2023
Messages: 7
Reaction score: 3
Points: 3

Aug 10, 2023 #1

I have a 2024 Telluride SX with 600 miles on it. Started the OTA update for software on 8/6/23. Now it appears that the infotainment screen is Black with a white KIA logo. Radio works but nothing else works and still blank screen. Been like this for 4 days. The screen has come back twice to normal then gone back to black with the white KIA markings. Talked to KIA connect and tried to reset the system. Did not work. They said bring it to the dealer. Dealer has now set up an appointment for two weeks out. Very frustrated with KIA as a whole. Poor customer experience and lack of support for this premium vehicle. If this is the start of many more problems to come gonna start documenting now to return the vehicle. MD has a good lemon law. Anyways, does anyone have a solution to this fix. I was gonna try to re-install the software but since it looks like the software is in an continually in a reboot loop did not want to break it again. I find it mind boggling that KIA is doing a 64GB update OTA via LTE(modem in the KIA). If a USB update take 2 hours how long does an OTA that is not always on or if you are lucky 1Mpbs. LTE Is not 5G but an older 4G connection. I calculate roughly 18 Hours that is if everything goes well...or 5days or never completes. Looking for anyone else if you have had similar experiences or a possible solution.

Reply



**Lostluggage**

New member

Joined: Oct 12, 2022
Messages: 9
Reaction score: 6
Points: 3

Jul 11, 2024 #1

So my infotainment part of my screen (the right side) just stopped working last week. Black screen. Curiously, a week before I went to the dealer who performed several recall/updates. Not sure if there's a coincidence. Anyway, after the dealer having the Telluride (2023 SX-X Line) for 3 days and back and forth with Kia tech-line to check for things like "loose wires" they've ordered a new head unit. 1-2 weeks for delivery. Told me it was an $8K part (warranty of course). Disheartening to say the least on a $58K car. Anyone else had this issue. I've seen alot of instrument cluster issues but that side (the left side with the spedometer etc) was fine. Just the right side went out. I now have a rental for week(s) until this is fixed.

2023 SX-Xline Glacial White Pearl Terracotta

Reply

---

[19] mdqs967, *Infotainment Screen Black with White KIA Logo-No Access to Bluetooth or Any Media Functions*, Kia Telluride Forums (Aug. 10, 2023), https://tellurideforum.org/threads/infotainment-screen-black-with-white-kia-logo-no-access-to-bluetooth-or-any-media-functions.14568/; Lostluggage, Display Stopped Working on a 2023. $8,000 Fix, Kia Telluride Forums (July 11, 2024), https://tellurideforum.org/threads/display-stopped-working-on-a-2023-8-000-fix.15690/;

51. The following are some examples of complaints from owners and lessees of the Vehicles concerning the Defect available tough NHTSA's website:[20]

**Safety Issue Type: Complaints**

**January 22 2026** NHTSA ID Number: 11712784

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number** 11712784

**Incident Date** January 22 2026

**Consumer Location** MERCER, WI

**Vehicle Identification Number** 5XYP5DGC1PG******

**Complaint Summary**

CRASH No
FIRE No
INJURIES 0
DEATHS 0

Upon starting suv, the instrument panel / cluster did not display. There is now no way to know speed, safety warnings such as malfunctioning sensors or safety features . No odometer or any driving feedback of any kind. Have scheduled appointment with dealer tomorrow.

**Affected Products (1)**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2023 |

[20] *See, e.g.*, NHTSA, https://www.nhtsa.gov/recalls (last visited July 28, 2026).

**Safety Issue Type: Complaints**

**November 06 2025** NHTSA ID Number: 11697898

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number** 11697898

**Incident Date** November 05 2025

**Consumer Location** THE VILLAGES, FL

**Vehicle Identification Number** 5XYP34GC3PG******

## Complaint Summary

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

Drivers display panel not working, no vehicle information is available, it's a black screen. This is the 4th incident since new in 2023. Car can't be driven with nothing displayed.

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2023 |

## Safety Issue Type: Complaints

**December 17 2025** NHTSA ID Number: 11705511

## Components: ELECTRICAL SYSTEM

**NHTSA ID Number** 11705511

**Incident Date** December 15 2025

**Consumer Location** INDIANAPOLIS, IN

**Vehicle Identification Number** 5XYP5DGC8PG******

## Complaint Summary

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

The contact owns a 2023 Kia Telluride. The contact stated that while the vehicle was parked, the instrument cluster went blank. The speedometer and fuel gauge failed to display as needed. The vehicle was not diagnosed or repaired by an independent mechanic or the dealer. The contact related the failure to NHTSA Campaign Number: 23V298000 (Electrical System); however, the VIN was not included in the recall. The manufacturer was not made aware of the failure. The failure mileage was approximately 30,000.

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2023 |

**Safety Issue Type: Complaints**

**November 06 2025** NHTSA ID Number: 11697898

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number** 11697898

**Incident Date** November 05 2025

**Consumer Location** THE VILLAGES, FL

**Vehicle Identification Number** 5XYP34GC3PG******

## Complaint Summary

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

Drivers display panel not working, no vehicle information is available, it's a black screen. This is the 4th incident since new in 2023. Car can't be driven with nothing displayed.

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2023 |

## Safety Issue Type: Complaints

**May 22 2025** NHTSA ID Number: 11662616

## Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER

**NHTSA ID Number** 11662616

**Incident Date** May 22 2025

**Consumer Location** MENDOTA HEIGHTS, MN

**Vehicle Identification Number** 5XYP54GC4PG******

## Complaint Summary

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

1. Instrument Cluster did not turn on when I started the car. The infotainment system turned on, along with the engine and rest of the car, but the instrument cluster that shows the speed, fuel gauge, etc was black. When I used my turn signals, the sound to indicate they are on would start initially and then stop after 2-3 times. 2. I had no idea how fast I was going or was my fuel level was. I was also not sure if my turn signals were working. This is where the lane change assist camera is shown, so I could not see that either. This screen also reflects warnings, so I would be unaware if anything came up. 3. No - we made the first earliest appointment with the dealer in 5 days from today. 4. No. 5. No warning lamps or messages (these would also appear on this screen, so if a warning came up I would not be aware).

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2023 |

## Safety Issue Type: Complaints

**July 21 2026** NHTSA ID Number: 11751721

## Components: ELECTRICAL SYSTEM, EXTERIOR LIGHTING

**NHTSA ID Number** 11751721

**Incident Date** July 11 2026

**Consumer Location** CHARLESTON, WV

**Vehicle Identification Number** 5XYP5DGCXRG******

## Complaint Summary

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

On XXX, while driving my 2024 Kia Telluride (VIN: [XXX]) with approximately 34,000 miles, the vehicle suddenly experienced a complete electrical failure without warning. The instrument cluster went completely black, I lost electric power steering assist, the transmission would not shift, and the vehicle would not accelerate. The vehicle lost motive power while I was driving, creating a significant safety hazard for me and surrounding traffic. After bringing the vehicle to a stop, it would not restart. The vehicle had to be towed to Dutch Miller Kia for diagnosis and repair. The vehicle is still covered under the manufacturer's warranty. It has been at the dealership since XXX, awaiting diagnosis and repair. As of the date of this complaint, I have not been provided with a loaner vehicle or alternate transportation. I am filing this complaint because a complete loss of electrical power, steering assist, acceleration, and shifting while the vehicle is in operation presents a serious safety risk. I believe this incident should be investigated to determine whether it represents a broader safety issue affecting other vehicles. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2024 |

## Safety Issue Type: Complaints

**April 30 2026** NHTSA ID Number: 11734772

## Components: ELECTRICAL SYSTEM

**NHTSA ID Number** 11734772

**Incident Date** April 30 2026

**Consumer Location** DARIEN, IL

**Vehicle Identification Number** 5XYP6DGC0RG******

## Complaint Summary

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

Dashboard display is black. Therefore, the odometer and speedometer are not visible. I cannot tell how fast I'm driving which is unsafe. I called the Naperville and Elmhurst locations and they did not deem the issue a priority to diagnose today.

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2024 |

**Safety Issue Type: Complaints**

**December 03 2025** NHTSA ID Number: 11702668

**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**

**NHTSA ID Number** 11702668

**Incident Date** December 03 2025

**Consumer Location** GREENVILLE, KY

**Vehicle Identification Number** 5XYP5DGC9RG******

## Complaint Summary

CRASH No
FIRE No
INJURIES 0
DEATHS 0

The Display stops working or goes blank. Speed sometimes shows incorrectly on display. Today with a full tank of fuel it showed the Telluride was empty. Dealer service is scheduled for next week. No warnings.

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2024 |

## Safety Issue Type: Complaints

**May 01 2025** NHTSA ID Number: 11658331

**Components: ELECTRICAL SYSTEM, VEHICLE SPEED CONTROL**

**NHTSA ID Number** 11658331

**Incident Date** May 01 2025

**Consumer Location** SELMA, IN

**Vehicle Identification Number** 5XYP3DGC6RG******

## Complaint Summary

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

The cluster display on the vehicle has went black. I am unable to see my speed, gas level, nor use cruise control. This is now the second time this has happened and Kia has no solutions for repair.

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2024 |

## Safety Issue Type: Complaints

**January 24 2026** NHTSA ID Number: 11713099

## Components: ELECTRICAL SYSTEM

**NHTSA ID Number** 11713099

**Incident Date** January 24 2026

**Consumer Location** WOODBURY, MN

**Vehicle Identification Number** 5XYP5DGC6SG******

## Complaint Summary

**CRASH** No
**FIRE** No
**INJURIES** 0
**DEATHS** 0

The LCD instrument cluster above the steering wheel is all black and not turning on. The map screen to the right turns on, but not the odometer screen. Can't tell how fast I'm going or how much gas is in the car. I've read this was an issue with the earlier models.

## Affected Products (1)

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2025 |

**Safety Issue Type: Complaints**

**January 24 2026** NHTSA ID Number: 11713117

**Components: ELECTRICAL SYSTEM, LANE DEPARTURE, BACK OVER PREVENTION**

**NHTSA ID Number** 11713117

**Incident Date** January 24 2026

**Consumer Location** WOOD DALE, IL

**Vehicle Identification Number** 5XYP5DGC2SG******

**Complaint Summary**

CRASH No
FIRE No
INJURIES 0
DEATHS 0

The driver screen are all blacked out, when I start my car in the morning, cannot see the speed, fuel gauge and all ADAS functions not working. Car is only a month old with only around 430 miles.

**Affected Products (1)**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| KIA | TELLURIDE | 2025 |

52. Kia specifically monitors customers' complaints made to NHTSA. Federal law requires automakers like Kia to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

53. Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. Similarly, automakers monitor NHTSA databases for consumer complaints

regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. Thus, Kia knew or should have known of the complaints about the Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and number of those complaints alerted, or should have alerted, Kia to the Defect.

54. Kia had knowledge, or should have known, about the Defect from all of these sources, yet it has done nothing to remedy the Defect; continued to sell Class Vehicles with a known safety issue; declined to issue a recall while, on information and belief, engaging in secret warranty-like practices and buying back Vehicles from consumers, or otherwise taking consumers out of their Vehicle loans or leases; and has sat on its hands as Kia dealerships charge class members large sums of money to diagnose the Defect when class members present their Vehicles for repair after it inevitably manifests.

55. Kia had knowledge that its omissions regarding the safety and performance of the Vehicle were misleading, yet it continued to make the same omissions regarding the Vehicles to Plaintiff and members of the proposed classes, despite the fact that Kia knew that the Vehicles were defective.

56. To date, Kia has failed to remedy the Defect and continued to sell the Class Vehicles despite its knowledge of the Defect.

57. To date, Kia has not demonstrated that it is capable of providing an adequate repair for the Defect, and Plaintiff and class members do not know whether Kia is capable of providing a repair for the Defect. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiff and class members. As a result, Plaintiff, at this stage of the litigation, seeks both restitution and a remedy at law, where the claims so permit. Further, Plaintiff seeks an injunction enjoining Kia and its agents, servants, and employees, and all persons acting under, in concert with, or for it from selling or leasing Class Vehicles without

notice that they are subject to the Defect, which cannot be repaired, and that this remains the situation.

**THE LIMITED REMEDIES' FAILURE OF THEIR ESSENTIAL PURPOSE**

58. Given the inherently defective nature of the Vehicles and their propensity to malfunction (or continue to malfunction) and require repair, and given Kia's inability to repair the Defect and its non-disclosure and affirmative concealment of these facts, enforcement of the unilaterally imposed durational and damage limits of the express warranty would so oppress and surprise Plaintiff and class members as to render these durational and damage limits unconscionable, and hence unenforceable.

59. Under the applicable warranty, Plaintiff and class members are entitled to the repair and replacement of defective parts. However, because the Defect persists after any repairs and replacements authorized by Defendant are made, and because Defendant knew that these actions were insufficient to cure the Defect, Plaintiff and class members are left without any remedy under a warranty to correct the Defect. Indeed, Defendant has had numerous opportunities to correct the Defect but has failed to do so.

60. When class members present their Vehicles for a Defect-related repair, Kia is unable to remedy the Defect. Continued presentment of Vehicles by Plaintiff and class members to Kia in hopes of a repair or remedy would thus be futile. Simply put, Defendant's express warranty fails its essential purpose, so that class members are without the benefit of their primary bargain—reliable and operational Vehicles that are safe and free of material defects.

61. The warranty service provided at Kia's dealerships and Kia's other agents' facilities failed to fix the problems with the Vehicles. As a result of Defendant's failure to properly or adequately repair the Defect, Plaintiff suffered direct and reasonably foreseeable incidental damages and did not have the benefit of a safe and reliable Vehicle.

**TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

62. Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and members of the class were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Defendant's deception with respect to the Defect.

63. Plaintiff and class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendant was concealing a defect and/or the Class Vehicles contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Class could not have discovered—through the exercise of reasonable diligence—the existence of the Defect or that the Defendant was concealing the Defect.

64. At all times, Defendant is and was under a continuous duty to disclose to Plaintiff and class members the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Defect in Class Vehicles.

65. Defendant knowingly, actively, and affirmatively concealed the facts alleged herein, and the Defect itself. Plaintiff and class members reasonably relied on Defendant's knowing, active, and affirmative concealment.

66. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations.

## CLASS ACTION ALLEGATIONS

67. Plaintiff, individually and as a class action on behalf of similarly situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3), seeks to represent the following classes:

> **Nationwide Class**
> All owners and lessees of Kia's model year 2023-2025 Telluride automobiles purchased or leased in the United States and its territories.
>
> **Illinois Subclass**
> All owners and lessees of Kia's model year 2023-2025 Telluride automobiles purchased or leased in the state of Illinois.

68. The "Nationwide Class" and "Illinois Subclass" are referred to herein as the "Class."

69. Excluded from the Class are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned. Plaintiff reserves the right to amend the definition of the Class if discovery and/or further investigation reveal that the classes should be expanded or otherwise modified.

70. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

71. **Numerosity:** The members of the Class are so numerous that joinder of all class members in a single proceeding would be impracticable. While the exact number and identities of individual members of the class is unknown at this time, such information being in the sole possession of Kia and obtainable by Plaintiff only through the discovery process, Plaintiff believe, and on that basis allege that tens of thousands of Vehicles have been sold and leased in the United States.

72. **<u>Existence/Predominance of Common Questions of Fact and Law</u>:** Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Such common questions of law or fact include, *inter alia*:

a. whether Kia engaged in the conduct alleged herein;

b. whether Kia omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

c. whether Kia's omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

d. whether Kia breached warranties with Plaintiff and the other class members—including the implied warranty of merchantability—when it produced, distributed, and sold the Class Vehicles;

e. whether Plaintiff's and other class members' Vehicles were worth less than as represented as a result of the Defect and conduct alleged herein;

f. whether Plaintiff and the other class members have been damaged and, if so, the extent of such damages; and

g. whether Plaintiff and the other class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

73. Kia engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, are substantially overcome, in both quality and quantity, by the numerous common questions that dominate this action.

74. **Typicality:** Plaintiff's claims are typical of the claims of the other class members because, among other things, Plaintiff and the other class members were injured through the substantially uniform misconduct described above. As with Plaintiff, class members also purchased or leased a Class Vehicle containing the Defect. Plaintiff are advancing the same claims and legal theories on behalf of themselves and all other class members, and no defense is available to Kia that is unique to Plaintiff. The same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all class members. Plaintiff and all class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Kia's wrongful conduct in selling/leasing and failing to remedy the Class Vehicles.

75. **Adequacy:** Plaintiff is an adequate class representative because he will fairly represent the interests of the class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the class they seek to represent and have the resources to do so. Plaintiff nor their counsel have any interest adverse or antagonistic to those of the class.

76. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Kia, so it would be impracticable for class members to individually seek redress for Kia's wrongful conduct. Even if class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all

parties and the court system. By contrast, the class action device presents no significant management difficulties, if any, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

77. Defendant has acted and refused to act on grounds generally applicable to the Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

78. Upon information and belief, class members can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Kia maintains regarding its sales and leases of Class Vehicles.

79. Unless the classes are certified, Defendant will improperly retain monies that they received from Plaintiff and members of the classes as a result of its conduct. Unless Defendant is required to change its conduct, it will continue to commit the violations and acts alleged herein and the members of the class and the general public will continue to be misled and harmed.

## CAUSES OF ACTION

## COUNT I

**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiff and the Nationwide Class)**

80. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

81. Defendant is and was at all relevant times a merchant with respect to the Vehicles, and manufactured, distributed, warranted, and sold the Vehicles.

82. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold is implied by law.

83. Plaintiff and Class members purchased or leased the Vehicles manufactured and sold by Defendant in consumer transactions.

84. The Vehicles, when sold and at all times thereafter, were not in merchantable condition, and the instrument cluster assemblies were not in merchantable condition and were not fit for the ordinary purpose for which cars are used. The Vehicles left Defendant's possession and control with the Defect that rendered them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to safety.

85. Kia knew before the time of sale to Plaintiff and the other class members, or earlier, that the Vehicles were produced with defective instrument cluster assemblies that are unfit for ordinary use, that rendered the Vehicles unfit for their ordinary purposes, and that posed a serious safety threat to drivers, passengers, and everyone else sharing the road with the Vehicles. This knowledge was based on Defendant's own industry standard internal validation of its vehicles prior to launching new models, internal testing, knowledge about and familiarity with the instrument cluster assembly included in the Vehicles, history of similar problems with instrument clusters displays malfunctioning or failing in prior models, and complaints by consumers and third parties.

86. The existence and ubiquity of the Defect is illustrated by the numerous publicized consumer complaints, disputes, and failed remedial measures nationwide.

87. Despite Plaintiff's and the other Class members' normal, ordinary, and intended uses, maintenance, and upkeep, the instrument cluster in the Vehicles experienced and continue to experience the Defect and premature failure.

88. The instrument cluster in the Vehicles and the Vehicles themselves are, and at all relevant times were, not of fair or average quality, and would not pass without objection.

89. All conditions precedent have occurred or been performed.

90. Plaintiff and Class members have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under Kia's warranty, including presentment, except as may have been

excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

91. Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

92. In addition, upon information and belief, Defendant received numerous complaints, notices of the need for repair and resulting safety issues, and requests for warranty repairs and coverage relating to the Defect from other members of the class. On information and belief, Kia also engages in buy backs and secretly rectifies the Defect when it manifests in the Vehicles and consumers complain about it.

93. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendant knew about prior to offering the Vehicles for sale and/or lease, and which Defendant did not disclose and did not remedy prior to (or after) sale and/or lease, is unconscionable, and Defendant should be estopped from pursuing such defenses.

94. Further, any such effort by Defendant to disclaim or otherwise limit liability for the Defect is null and void because Kia and its authorized agents (the dealers) have wrongfully, uniformly, and repeatedly refused and failed to recall or issue a permanent fix for the Defect.

95. Specifically, Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first made these warranties and their limitations that the defect existed, and the warranties might expire before a reasonable consumer would notice or observe the defect. Defendant also failed to

take necessary actions to adequately disclose or cure the Defect after the existence of the Defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the Defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the Defect or cure its breaches of warranty.

96. As such, Defendant should be estopped from disclaiming liability for its actions.

97. Privity of contract is not required for consumer implied warranty claims under the relevant laws. However, Plaintiff and the other class members had sufficient direct dealings with Defendant and its agents (dealers) to establish privity of contract.

98. Kia's authorized dealers are agents of Kia, and there is a factually plausible agency relationship between Kia and its dealerships. This agency is factually supported by at least the following: 1) Kia's warranty directs Class Vehicle owners to present their vehicles to Kia authorized dealerships for repairs; and 2) Kia requires dealerships to submit detailed data to it regarding repairs performed at dealerships. These considerations demonstrate the agency relationship between Kia and its dealerships, with whom Plaintiff interacted and transacted as alleged herein.

99. Privity is also not required in this case because Plaintiff and other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers (i.e., its agents); specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiff and Class members. Privity is also not required because Plaintiff's and the other Class members' Vehicles are inherently dangerous due to the aforementioned defect and nonconformities.

100. Kia also had direct dealings with Plaintiff and Class members by providing warranties directly to Plaintiff and Class members. Kia provided the

NVLW directly to Plaintiff and Class members, creating privity between the parties.

101. Plaintiff and other Class members suffered and will suffer diminution in the value of their Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

**COUNT II**
**Fraud/Fraudulent Omission**
**(On Behalf of Plaintiff and the Nationwide Class)**

102. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

103. Defendant actively, intentionally, and knowingly concealed, suppressed, and/or omitted material facts including the existence of the Defect and the standard, quality, or grade of the Vehicles and the fact that the Vehicles contain a Defect and corresponding safety risk, with the intent that Plaintiff and class members rely on Defendant's omissions. As a direct result of the Defendant's fraudulent conduct, as alleged herein, Plaintiff and members of the class have suffered actual damages.

104. Defendant knew at the time of sale or lease and thereafter that the Vehicles contained the Defect, omitted material information about the safety of the Vehicles, and actively concealed the Defect. To date, Defendant has not provided Plaintiff and members of the class with an adequate repair or remedy for the Defect.

105. Defendant possessed superior and exclusive knowledge regarding the Defect, and therefore had a duty to disclose any information relating to the safety and functionality of key safety features in the Vehicles.

106. The Defect is material to Plaintiff and the Class because Plaintiff and Class members had a reasonable expectation that the Vehicles would not contain a Defect that causes their digital instrument cluster to fail and that exposes them and others to a safety risk. No reasonable consumer expects a vehicle to contain a

concealed defect, such as the Defect as well as its associated safety risk.

107. Plaintiff and Class members would not have purchased or leased the Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Vehicles and the existence of the Defect and corresponding safety risk, or would have paid less for the Vehicles.

108. Kia knew its concealment and suppression of the Defect was false and misleading, and knew the effect of concealing those material facts. Kia knew its misstatements, concealment, and suppression of the Defect would sell more Vehicles and would discourage Plaintiff and Class members from seeking replacement or repair of the Defect during the applicable warranty periods. Further, Defendant intended to induce Plaintiff and Class members into purchasing or leasing the Vehicles and to discourage them from seeking replacement or repair of the Defect in order to decrease costs and increase profits.

109. Defendant acted with malice, oppression, and fraud.

110. Plaintiff and Class members reasonably relied upon Defendant's knowing misrepresentations, concealment and omissions. As a direct and proximate result of Defendant's misrepresentations, omissions and active concealment of material facts regarding the Defect and the associated safety risk, Plaintiff and Class members have suffered actual damages in an amount to be determined at trial.

## COUNT III
## Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*
## (On Behalf of Plaintiff and the Nationwide Class)

111. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

112. The acts, omissions, misrepresentations, practices, and non-disclosures of Kia alleged herein constitute unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business and Professions Code sections 17200, *et seq*.

113. Kia violated the UCL's unlawful prong by engaging in conduct that violates, among other laws, the consumer-protection, warranty, and common-law duties alleged in this Complaint, including the duty not to omit material facts concerning a known safety defect in vehicles sold or leased to consumers.

114. Kia violated the UCL's unfair prong by designing, manufacturing, distributing, marketing, selling, leasing, and warranting Class Vehicles with a known Cluster Defect; failing to disclose the Defect and associated safety risk; failing to provide an adequate remedy; and shifting the costs and risks of the Defect to Plaintiff and Class members. The harm to consumers from these practices is substantial, is not outweighed by any countervailing benefits, and could not reasonably have been avoided by consumers.

115. Kia violated the UCL's fraudulent prong because its omissions and concealment regarding the Defect were likely to deceive reasonable consumers. Reasonable consumers expect that a vehicle's digital instrument cluster will reliably display speed, warning lights, telltales, fuel level, gear position, and other safety-critical information, and would consider the existence of the Defect and the risk of instrument cluster failure material when deciding whether to purchase, lease, or pay the price charged for a Class Vehicle.

116. Kia had exclusive and superior knowledge of the Defect through, among other things, pre-sale testing, internal analysis, warranty data, dealer repair data, consumer complaints, NHTSA reports, prior Telluride instrument cluster recalls, and its own investigation of instrument cluster failures. Plaintiff and Class members could not reasonably have discovered the Defect before purchase or lease because the Defect was latent, intermittent, and concealed from consumers.

117. Kia's UCL violations caused Plaintiff and Class members to suffer economic injury. Had Kia disclosed the Defect and associated safety risk, Plaintiff and Class members would not have purchased or leased the Class Vehicles, would have paid less for them, or would have sought different vehicles. As a result, Plaintiff

and Class members paid more for the Vehicles than they were worth and received vehicles of a lesser standard, grade, and quality than represented or reasonably expected.

118. Kia's conduct occurred in, was directed from, and emanated from California, including Kia's headquarters in Irvine, California, where Kia manages its United States sales, marketing, distribution, warranty, service, and customer-relations operations. Kia's California-based conduct was uniform as to Plaintiff and the Nationwide Class.

119. Plaintiff and Class members seek all relief available under the UCL, including restitution, disgorgement of monies wrongfully obtained, and injunctive relief requiring Kia to disclose the Defect, cease its unlawful, unfair, and fraudulent practices, and provide an effective remedy for the Defect.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

120. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

121. This claim is pleaded in the alternative to the other claims herein, and seeks restitution of ill-gotten gains.

122. As a direct and proximate result of Kia's omissions concerning and its failure to disclose the known Defect, Kia has profited through the sale and lease of the Vehicles and subsequently by profiting on the purchase of replacement parts and charging Plaintiff and other Class members for expensive repairs to their Vehicles when the brakes inevitably fail. Although these Vehicles are purchased through Kia's agents, the money from the Vehicle sales flows directly back to Kia.

123. As a direct and proximate result of Kia's omissions concerning and its failure to disclose the known Defect, Kia has profited through the sale and lease of the Vehicles and subsequently by profiting on the purchase of replacement parts and

charging Plaintiff and other Class members for expensive repairs to their Vehicles when the instrument cluster inevitably fails. Although these Vehicles are purchased through Kia's agents, the money from the Vehicle sales flows directly back to Kia.

124. Additionally, as a direct and proximate result of Kia's failure to disclose the known Defect in the Vehicles, Plaintiff and Class members have Vehicles that will require high-cost repairs and therefore have conferred an unjust substantial benefit upon Kia.

125. Kia has been unjustly enriched due to the known Defect in the Vehicles through the receipt and use of money paid for the defective vehicles, sale of replacement parts, and performance of repairs that added to Kia's profits when said money should have remained with Plaintiff and the class members.

126. As a result of Kia's unjust enrichment, Plaintiff and Class members have suffered damages.

127. Equity and good conscience militate against allowing Kia to retain its ill-gotten gains, and requires disgorgement and restitution of the same.

## COUNT V

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, *et seq.***
**(On Behalf of Plaintiff Bicek and the Illinois Subclass)**

128. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

129. This claim is brought on behalf of Plaintiff Bicek and Illinois Subclass members.

130. Kia's conduct constituted, among other things, the following prohibited, deceptive and unfair business practices: (a) knowingly representing that property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have; (b) knowingly representing that property or services are of a particular standard, quality, grade, style or model, if they are of another which differs materially from the

representation; (c) knowingly representing that property or services have uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; (d) knowingly representing that use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist; (e) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; and (f) the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material fact.

131. Kia's conduct constituted, among other things, the following unconscionable methods, acts or practices in the conduct of trade or commerce: (a) Kia knowingly or with reason to know, took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (b) Kia knew or had reason to know the consumer was unable to receive a material benefit from the subject of the transaction; and (c) Kia knew or had reason to know the transaction the supplier induced the consumer to enter into was excessively one sided in favor of the supplier; and (d) Kia knew or had reason to know it made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

132. Kia's conduct was fraudulent and deceptive because the omissions created a likelihood of confusion and misunderstanding and had the capacity or tendency to deceive and, in fact, did deceive, ordinary consumers, including Plaintiff. Ordinary consumers, including Plaintiff, would have found it material to their purchasing decisions that the Class Vehicle suffered from the Defect.

133. Kia owed Plaintiff Bicek and Illinois Subclass members, among others, a duty to disclose these facts because they were known and/or accessible exclusively to it.

134. Plaintiff Bicek and members of the Illinois Subclass justifiably relied on the material misrepresentations and/or omissions by Kia, and reasonable consumers would have been expected to rely upon these omissions, in part, because they are omissions that impact seriously on a consumer's health and well-being.

135. Kia's conduct actually and proximately caused an ascertainable loss of money or property to Plaintiff Bicek (as set forth above) and members of the Illinois Subclass. Absent Kia's unfair, deceptive, unconscionable and/or fraudulent conduct, Plaintiff Bicek and Illinois Subclass members would have behaved differently and would not have purchased or leased the Class Vehicles. Kia's omissions induced Plaintiff Bicek and Illinois Subclass members to purchase or lease the Class Vehicles.

136. Accordingly, Plaintiff Bicek and Illinois Subclass members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed classes, prays for judgment as follows:

a) Certification of the classes under Federal Rule of Civil Procedure 23;

b) Appointment of Plaintiff as representatives of classes and their counsel as class counsel;

c) Compensatory and other damages for economic and non-economic damages;

d) An award of restitution and/or disgorgement;

e) An injunction requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

f) Statutory pre-judgment and post-judgment interest on any amounts;

g) Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

h) Such other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: July 31, 2026

Respectfully submitted,

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Attorneys for Plaintiff and the Proposed Class*